Electronically FILED by Superior Court of California, County of Los Angeles on 02/14/2023 12:00 PM David W. Slayton, Executive Officer/Clerk of Court, by I. Valencia,Deputy Clerk
Case 23-01243-PDR    Doc 33SMCV00652iled 11/14/23    Page 1 of 26
Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Craig Karlan

Stephen B. Morris (SBN 126192)
Law Offices of Stephen B. Morris
2305 Historic Decatur Rd., Suite 100
San Diego, CA. 92106
Email: smorris@stephenbmorrislaw.com
Phone: (619) 985-4462

Attorney for Plaintiffs

**EXHIBIT A**

SUPERIOR COURT FOR LOS ANGELES COUNTY

SANTA MONICA DIVISION

| | |
|---|---|
| AREZOU SHAHBAZI, JOSHUA KATS, and SEAN HERSHBERGER<br><br>v.<br><br>DAVID GEMMELL, an individual and DOES 1 through 10. | Case No. 23SMCV00652<br><br>COMPLAINT FOR:<br><br>1. BREACH OF FIDUCIARY DUTY;<br>2. BREACH OF CONTRACT;<br>3. AN ACCOUNTING<br>4. FRAUD |

Plaintiffs, AREZOU SHAHBAZI, JOSHUA KATS, and SEAN HERSHBERGER ("PLAINTIFFS") allege as follows:

1. Plaintiff, AREZOU SHAHBAZI ("SHAHBAZI"), is, and at all times herein mentioned was, a certified radiologist.

2. Plaintiff, JOSHUA KATS, ("KATS"), is, and at all times herein mentioned was, a certified radiologist.

3.  Plaintiff, SEAN HERSHBERGER, ("HERSHBERGER"), is, and at all times herein mentioned was, a certified radiologist.

4.  Defendant DAVID GEMMELL (GEMMELL) is a dentist residing in Florida.

5.  DENTISTRY X, LLC, ("DENTISTRY X") is, and at all times herein mentioned was a limited liability company formed under the laws of the state of Florida, doing business in Los Angeles California and elsewhere, and operated and controlled by GEMMELL.

6.  Plaintiff are unaware of the true names and capacities of the Defendants herein designated as DOES 1 through 10, inclusive, and therefore sues such fictitiously named Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint when the true names and capacities of said fictitiously named Defendants are ascertained.

7.  Plaintiffs are informed and believe, and based thereon, allege that the defendants are at all times material hereto, the agent, servant, employee or co-conspirator of and with the other Defendants and in doing all of the things herein alleged were acting within the course and scope of such agency, service, employment and conspiracy.

8.  DENTISTRY X was formed by GEMMELL on or about October 23, 2019, for the purpose of investing in various dentistry related ventures.

9.  GEMMELL solicited investments from Plaintiffs, who each did invest $75,000.00.  GEMMELL represented and agreed that if Plaintiffs wanted to withdraw from the venture, he would later pay them $125,000 each, i.e. he would pay them a return on their investments.

10. From January 2020 until present day, instead of investing Plaintiffs' money as promised and agreed, Plaintiffs are informed and believe and on that basis allege GEMMELL has used DENTISTRY X bank accounts as his personal line of credit, withdrawing and repaying loans at will without the knowledge, authorization or consent of the members of DENTISTRY X.

11.  GEMMELL has used the assets of DENTISTRY X for his own benefit and has depleted all of its assets to the detriment of Plaintiffs.

## FIRST CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY, AGAINST ALL DEFENDANTS)

12.   Plaintiffs reallege and adopt and incorporate by reference each and every allegation contained in paragraphs 1 through 11 inclusive, of this Complaint as though restated in full herein.

13.  GEMMELL is, and at all times herein mentioned was a manager, or de facto manager, of DENTISTRY X and took control, without Plaintiffs' consent, of all aspects of DENTISTRY X. As directors of the company, GEMMELL owed to each of the Plaintiffs  a duty of loyalty and/or a duty of care.

14. Defendant, GEMMELL has breached his fiduciary duty owed to Plaintiffs,

    a.  By failing to make accurate and timely distributions to the members, including Plaintiffs, and by falsifying the K-1's issued to Plaintiffs and the Internal Revenue Service.

    b.  By intentionally usurping various corporate opportunities belonging to DENTISTRY X.

    c.  By using the DENTISTRY X bank accounts as his personal line of credit, withdrawing and repaying loans to himself and to his corporation at will without the knowledge, authorization or consent of Plaintiffs.

    d.  By embezzling funds through unauthorized payments to himself and his family members each month as additional management fees.

    e.  By engaging in self-dealing through an attempted purchase of a 51% equity stake deal in a Vancouver-based imaging center, and then presenting a falsified fee structure to the Plaintiffs after work had been completed.

    f.  By engaging in self-dealing at a disadvantage to plaintiffs.

15. As a result of the breach of fiduciary duty owed by Defendants to Plaintiffs, Plaintiffs have been damaged in excess of $225,000.

16. Because GEMMELL's conduct was malicious, fraudulent and oppressive and done with a conscious disregard of Plaintiffs' rights, Plaintiffs are also entitled to exemplary and punitive damages in amount to be decided at trial.

## SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT AGAINST ALL DEFENDANTS)

17. Plaintiffs reallege and adopt and incorporate by reference each and every allegation contained in paragraphs 1 through 15 inclusive, of this Complaint as though restated in full herein.

19.  Since Plaintiffs executed a "Shareholder Agreement" (the Agreement) with GEMMELL in January 2020, Plaintiffs have done everything required of them pursuant to the terms of the agreement, but GEMMELL has breached the agreement by failing to protect Plaintiffs' investments, failing to keep Plaintiffs' investment separate from his own funds, failing to organize the investments lawfully as an LLC, failing to honor buy back provisions of the Agreement and otherwise failing to comply with the terms and conditions of the Agreement.

20.   As a direct and proximate result of the breaches by Defendants, Plaintiffs have been damaged in an amount in excess of $225,000.

## THIRD CAUSE OF ACTION
## (FOR AN ACCOUNTING, AGAINST ALL DEFENDANTS)

21. Plaintiffs reallege and adopt and incorporate by reference each and every allegation contained in paragraphs 1 through 20, except paragraph 17, inclusive, of this Complaint as though restated in full herein.

22. Defendant GEMMELL is in sole possession of the books, assets, accounts and all other financial information of Defendant DENTISTRY X.

23. Defendant GEMMELL has failed and refused, and continues to fail and refuse, to provide this information to Plaintiffs, and has blocked Plaintiffs' administrative access to the same.  As such, the assets, liabilities, profits and losses related to Defendant DENTISTRY X cannot be ascertained without a complete accounting of the ongoing financial operations of Defendant DENTISTRY X.

24. Plaintiffs are informed and believe, and based thereon allege, that such a full and complete accounting of the book and records (including computerized financial records) of DENTISTRY X, is the only way Plaintiffs can determine the amount of funds and proceeds due and owing to them and the only way Plaintiffs can calculate the precise amount of damages owed to them.

25. Plaintiffs have performed each and every obligation required of them by the Operating Agreement described herein, except those obligations that have been excused by GEMMELL's breach.

26. As a direct and proximate result of GEMMELL's breach of the Operating Agreement as set forth herein, Plaintiffs have been damaged in the sum to be determined at trial.

### FOURTH CAUSE OF ACTION
### (FOR FRAUD, AGAINST ALL DEFENDANTS)

27. Plaintiffs reallege and adopt and incorporate by reference each and every allegation contained in paragraphs 1 through 26 inclusive, of this Complaint as though restated in full herein.

28. In or about August to November of 2019, GEMMELL represented to Plaintiffs that he had several clinics contracted for services to be delivered upon website activation, that premium prices were already set at $125-$200 per scan, that hundreds of scans per day were expected, and that a massive social media blitz would be activated by an already-hired marketing team to ensure a successful website launch.

29. Based on these representations, Plaintiffs invested their time, energy and money to invest with GEMMELL.

30. At all times herein, Plaintiffs reasonably relied on the representations described herein made by GEMMELL.

31. The representations made by GEMMELL were at all times false.

32. As a direct and proximate result of GEMMELL's breach of the contract as set forth herein, Plaintiffs have been damaged in the sum to be determined at trial.

33. Because GEMMELL's conduct was malicious, fraudulent and oppressive and done with a conscious disregard of Plaintiffs' rights, Plaintiffs are also entitled to exemplary and punitive damages in amount to be decided at trial.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For damages according to proof at the time of trial;

2. For punitive and exemplary damages in an amount sufficient to punish Defendants;

3. For costs of suit herein; and

4. For such other relief as the court deems proper.

Dated: 2/13/23                    **LAW OFFICES OF STEPHEN B. MORRIS**

/s/ Stephen B. Morris

_____

Stephen B. Morris, counsel for Plaintiffs

## EXHIBIT
# B

## SHAREHOLDER AGREEMENT

THIS SHAREHOLDER AGREEMENT made this _____ day of December, 2019,

**BETWEEN:**

David Gemmell

OF THE FIRST PART

and

Sean Hershberger

OF THE SECOND PART

and

Josh Kats

OF THE THIRD PART

and

Cleo Vidican

OF THE FOURTH PART

and

Arezou Shahbazi

OF THE FIFTH PART

and

Dentistry X
(the "Corporation")

OF THE SIXTH PART

**BACKGROUND:**

A. The Corporation is incorporated under the Florida Business Corporation Act (the "Act").

B. The Act permits the Shareholders to enter into a shareholder agreement in writing to restrict the powers of the directors of the Corporation to manage the business and affairs of the Corporation and to confer certain of the powers normally possessed by the directors of the Corporation on the Shareholders.

C. The Shareholders have decided to enter into this agreement (the "Agreement") to govern their respective interests, obligations, liabilities, ownership and rights in the Corporation and to provide for the better government of the Corporation.

D. All of the Shareholders have executed this Agreement.

E. The Corporation has executed this Agreement for the purpose of acknowledging notice of this Agreement and, where permitted by law, for the purpose of agreeing to give effect to the terms of this Agreement.

**IN CONSIDERATION OF** the premises and mutual covenants and agreements in this Agreement, the sufficiency of which is hereby acknowledged, the parties agree as follows:

### <u>Interpretation</u>

1. In this Agreement

    a. "Articles" means the Corporation's Articles of Incorporation or Articles of Amalgamation, as the case may be;

    b. "Board" means the board of directors of the Corporation;

    c. "Business Day" means a day other than a Saturday or Sunday or statutory holiday;

    d. "By-laws" means the by-laws of the Corporation as of the date of this Agreement and as may be amended from time to time;

    e. "Fair Market Value" means the fair market value as determined by this Agreement;

    f. "Financial Statements" means the financial statements of the Corporation, prepared in accordance with generally accepted accounting principles;

    g. "Party" or "Parties" means all of the Shareholders and the Corporation;

h. "Share" or "Shares" refers to one or more shares in the capital of the Corporation;

i. "Shareholder" means any one of the Shareholders who is or later becomes a Shareholder in the Corporation;

j. "Shareholders" mean any two or more of the Shareholders who are or later become Shareholders in the Corporation.

### Shareholder Agreement

2. This Agreement restricts the Board's power to manage and supervise the Corporation to the extent necessary to effect the Shareholders' objectives as such objectives are set out in this Agreement and transfers such powers to the Shareholders. The Shareholders acknowledge that to the extent the Board's powers are restricted and transferred to the Shareholders, the obligations and liabilities of the Board, and the individual directors thereon, are also transferred to the Shareholders.

### By-laws and Articles

3. The By-laws will be read as being subject to the provisions of this Agreement. The By-laws will not be amended or repealed except by written Agreement of all of the Shareholders.

4. The Articles will be read as being subject to the provisions of this Agreement. The Articles will not be amended or repealed except by written Agreement of all of the Shareholders.

### Warranties

5. The Corporation warrants that as of the date of this Agreement, all issued and outstanding Shares are owned as follows:

| Name | Number of Shares | Class |
|---|---|---|
| David Gemmell | 80 | Class A |
| Sean Hershberger | 5 | Class A |
| Josh Kats | 5 | Class A |
| Cleo Vidican | 5 | Class A |
| Arezou Shahbazi | 5 | Class A |

6. Each Shareholder warrants that the Shareholder is the sole beneficial owner of the Shares identified as being owned by that Shareholder in this Agreement.

7. The Corporation warrants that it has the necessary corporate power and authority to enter into this Agreement and to perform its obligations under this Agreement.

8. Each Shareholder warrants that he or she is not prevented by reason of law or any other contractual agreement from entering into this Agreement.

### Management of the Corporation

9. Hierarchy will sit as board of directors and all other future added board members will be selected by the original founding hierarchy. Unless, founding hierarchy members have left Dentistry X, sold their shares back to the company or have been removed. Then the voting process will be directed by the president of Dentistry X until further notice.

10. In the event of a vacancy on the Board, the Shareholders agree to exercise, as soon as practicable, any and all voting rights attached to all Shares owned by them to elect the following individuals, who are listed in order of preference, as directors of the Corporation unless the person that the Shareholders have agreed to elect is unable or unwilling to act as a director:

   a. Cleo Vidican

11. The following persons will be appointed to the office or offices of the Corporation shown beside their respective names:

| Officer Title | Name | Term | Annual Salary |
|---|---|---|---|
| President: | David Gemmell | Indefinitely | $300,000.00 |
| Vice-President: | Cleo Vidican | Jan 1, 2021- | $150,000.00 |

12. The Corporation will not purchase, redeem or acquire any Shares from any Shareholder except as provided in this Agreement and except in compliance with corporate solvency provisions and capital requirements of the Act.

13. The Corporation will not issue any Shares after the date of this Agreement unless the Shares are issued in accordance with this Agreement or with the prior written approval of all of the Shareholders.

**<u>Pre-Emptive Rights</u>**

14. Subject to the limitations on pre-emptive rights in the Act, and subject to the Articles, any Shares issued by the Corporation will be offered and issued in accordance with the following provisions:

    a. The Shares will be offered first to David Gemmell at a price of $25,000 per Class A share if sold within the first 2 years, after the second year the fair price of the share will be offered, then to the remaining Shareholders of the class of Shares being issued (the "First Offer") on a pro rata basis.

    b. Any Shares remaining after the First Offer will be offered on an equal basis to the other Shareholders of that class (the "Second Offer") for not less than the subscription price specified in the First Offer and on terms not more favorable than those in the First Offer.

    c. Any Shares remaining after the Second Offer will be offered on an equal basis to all Shareholders in the Corporation (the "Third Offer") for not less than the subscription price specified in the Second Offer and on terms not more favorable than those in the First Offer.

    d. Any Shares remaining after the Third Offer may be offered to any person or persons (the "Final Offer") for not less than the subscription price specified in the Third Offer and on terms not more favorable than those in the First Offer.

15. The First Offer, the Second Offer, the Third Offer and the Final Offer (collectively and individually the "Offer") will be in writing and will specify:

    a. the subscription price at which the Shares are offered;

    b. the date by which the Offer must be accepted, which will be not less than 10 Business Days from the date on which the Offer is made;

    c. the terms of the Offer; and

    d. the closing date for the transaction, which will be between 30 and 90 Business Days from the date on which the Offer is accepted.

16. If the Offer is not accepted within the time period specified for accepting the Offer, the Offer will be deemed to be declined.

17. Shares will not be issued unless:

    a. the subscriber is a party to this Agreement; or

    b. the subscriber agrees to be bound by and to become a party to this Agreement and gives a written and legally binding undertaking to be bound by and become a party to this Agreement.

### Restrictions on Transfer or other Disposal of Interest

18. Shareholders will not and will not agree to directly or indirectly sell, assign, transfer, give, pledge, hypothecate or otherwise dispose of or in any other way encumber any Shares or any interest in any Shares and will not create any security interest in or grant any option with respect to any Shares or any interest in any Shares, except in accordance with the express provisions of this Agreement or except with the prior written approval of all of the Shareholders.

### Death or Incapacity of Shareholder

19. If a Shareholder dies or becomes incapable (the "Incapacitated Shareholder") of performing duties that the Shareholder is required to perform as a director or officer or as otherwise imposed by this Agreement by reason of sickness, injury, mental or physical incapacity ("Incapacity") and it appears as though the Incapacitated Shareholder will not recover so as to be able to perform those duties within 90 days of the Incapacity, the other Shareholders will purchase all of the

Incapacitated Shareholder's Shares at Fair Market Value as soon as practicable but not later than 6 months after the Incapacity. If there is more than one other Shareholder purchasing the Incapacitated Shareholder's Shares, each Shareholder will, subject to the prior written agreement of the other purchasing Shareholders, purchase an equal amount of the Incapacitated Shareholder's Shares as a second offer, the primary offer will be offered solely to David Gemmell to buy back shares at fair market price. Each Shareholder may obtain insurance on the life of any other Shareholder in an amount not exceeding the estimated Fair Market Value of that Shareholder's Shares. The proceeds from any such life insurance will be used for the sole purpose of purchasing a deceased Shareholder's Shares or in the case of David Gemmell, to reimburse shareholder's direct family the fair market value of the owned shares.

### **Dispute Resolution**

20. In the event a dispute arises between two or more Shareholders, the Shareholders will attempt to resolve the dispute through friendly consultation. If the dispute is not resolved within a reasonable period, then any or all outstanding issues may be submitted to mediation in accordance with any statutory rules of mediation. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration in accordance with the laws of the State of Florida. The arbitrator's award will be final, and judgment may be entered upon it by any court having jurisdiction within the State of Florida.

21. The dispute resolution process may be commenced by any of the Shareholders by the delivery of written notice (the "Notice of Dispute") to all other Shareholders. The notice will specify the dispute to be arbitrated, the issues of fact and law to be determined and the proposed arbitrator.

22. Any Shareholder may object to a proposed mediator and propose an alternate by delivering a written notice of objection to all other Shareholders within 15 Business Days of receiving the Notice of Dispute. All of the proposed mediators will jointly appoint a mediator. If the proposed mediators are unable to agree upon a mediator, any party to the dispute may apply to the Court for the appointment of a mediator.

23. Any Shareholder may object to a proposed arbitrator and propose an alternate by delivering a written notice of objection to all other Shareholders within 15 Business Days of receiving the Notice of Dispute. All of the proposed arbitrators will jointly appoint an arbitrator. If the proposed arbitrators are unable to agree upon an arbitrator, any party to the dispute may apply to the Court for the appointment of an arbitrator.

24. If no Shareholder objects by written notice to the proposed mediator or arbitrator within 15 Business Days of receiving the Notice of Dispute, the proposed mediator or arbitrator will be presumed acceptable.

25. Every mediator and arbitrator, and all proposed mediators and arbitrators will be at arm's-length from every Party to this Agreement and will not have any interest in the dispute.

26. The mediator or arbitrator will, subject to applicable legislation, determine the procedure for hearing the dispute but will give written reasons for material findings of fact and a written decision.

27. The mediator or arbitrator will determine the liability among the parties to the dispute for the cost of the dispute resolution process and for the payment of the mediator or arbitrator.

### Shot Gun Provision

28. If any of the Shareholders have a dispute (a "Material Dispute") regarding:

    a. the manner in which the affairs of the Corporation are to be conducted;

    b. the business in which the Corporation should engage; or

    c. any other matter where the disagreement is of such a nature that it is likely to prejudice the operations or profitability of the Corporation

    and if the Material Dispute cannot be resolved within a reasonable period or through the mediation and arbitration provisions included in this Agreement, then any Shareholder (the "Initiating Shareholder") may initiate a forced buy or sell agreement (the "Shot Gun Provision").

29. If there are only two Shareholders to this Agreement at the time this Shot Gun Provision is utilized, the Initiating Shareholder will give a written offer (the "Offer") to the other Shareholder (the "Offeree") specifying the price per Share (the "Price") at which the Initiating Shareholder is willing to:

    a. sell all of the Shares owned by the Initiating Shareholder; or

    b. purchase all of the Shares owned by the Offeree.

30. The Offeree will, within 15 Business Days of receiving the Offer, give notice to the Initiating Shareholder indicating that the Offeree has elected to either:

    a. purchase the Initiating Shareholder's Shares at the Price; or

    b. sell the Offeree's Shares at the Price.

31. If the Offeree does not respond to the Offer before 5 o'clock in the afternoon on the 15th Business Day after the date on which the Offer was received, the Offeree will be deemed to have agreed to sell the Offeree's Shares to the Initiating Shareholder at the Price.

32. If the Offeree elects to purchase the Initiating Shareholder's Shares, the Offeree will tender a certified check for the Price within 10 Business Days of notifying the Initiating Shareholder that the Offeree has elected to purchase the Initiating Shareholder's Shares, and the Initiating Shareholder will transfer or cause to be transferred to the Offeree all of the Initiating Shareholder's Shares on receipt of the Price.

33. If the Offeree elects or is deemed to elect to sell the Offeree's Shares to the Initiating Shareholder, the Initiating Shareholder will tender a certified check for the Price within 10 Business Days of either the date on which the Initiating Shareholder receives notice that the Offeree has elected to sell the Offeree's Shares or the date on which the Offeree is deemed to have elected to sell the Offeree's Shares to the Initiating Shareholder, and the Offeree will transfer or cause to be transferred to the Initiating Shareholder all of the Offeree's Shares on receipt of the Price.

34. Failure to make a payment required by this Shot Gun Provision or failure to transfer the Shares as required by this Shot Gun Provision will be deemed to be a breach of contract and the non-defaulting party will, in addition to any other remedies available by statute or at law or equity, be entitled to and may elect to, by written notice within 30 Business Days of the default, purchase the defaulting party's Shares at 75% of the Price.

35. If there are more than two Shareholders to this Agreement, the Initiating Shareholder may make an Offer to one of the other Shareholders, and the procedure in this Shot Gun Provision will apply as if there were only two Shareholders. The Initiating Shareholder may also make an offer to the other Shareholders as a group, and the other Shareholders will either come to an agreement among themselves to buy the Initiating Shareholder's Shares or will, as a group, elect to sell all of their Shares to the Initiating Shareholder, and the procedure in this clause will apply.

**Right of First Refusal**

36. Shareholders are prohibited from selling, transferring or otherwise disposing of their Shares or any interest in their Shares unless:

    a. the Shares are first offered at not more than Fair Market Value to David Gemmell of Shares being sold on a pro rata basis ("Offer One"); and

    b. the Shares remaining after Offer One are offered to all other Shareholders on an equal basis ("Offer Two") for not less than the price specified in Offer One and on terms not more favorable than those in Offer One.

37. The Shares remaining after Offer Two may be offered to any person or entity (the "Third Party Offer") for a period of 180 days from the date on which Offer Two was made for not less than the price specified in Offer Two and on terms not more favorable than those in Offer One.

38. Offer One, Offer Two and the Third Party Offer (collectively and individually the "Offer") will be in writing and will specify:

    a. the price at which the Shares are offered;

    b. the date by which time the Offer must be accepted, which will be not less than 10 Business Days from the date on which the Offer is made;

    c. the terms of the Offer; and

    d. the closing date for the sale of the Shares, which will be between 30 and 90 Business Days from the date on which the Offer is accepted.

39. Any Offer not accepted within the time period specified for accepting the Offer will be deemed to be declined.

### Valuation

40. The Fair Market Value of the Shares will be set by the Shareholders on an annual basis and will be communicated by way of a Shareholders Resolution declaring that the Shareholders agree that the Fair Market Value of each Share of each class and series is a specified amount.

41. At the date of this Agreement the Fair Market Value of the Shares is as follows:
    - Class A shares have a value of $15,000 per share.

- A total of 100 shares or 100% equity value of Dentistry X has been determined to be valued at $1,500,000.00 USD.

- All Shareholders excluding David Gemmell, have agreed to pay for a 5% equity stake at this valuation this month (December 2019). An additional 5% purchase commencement for each current shareholder/ hierarchy will be issued approximately 6 months-12 months and outlined in a promissory agreement.

### Dividends

42. Subject to corporate law solvency requirements and to the extent permitted by law and after payment of any Shareholder loans and after establishing sufficient reserves for the normal operation of the Corporation's business activities and debt serving requirements, 50% of the Corporation's profits will be distributed by way of dividend. Dividends will be distributed semi-annually.

43. Dividend payout percentages will increase or decrease as needed by the company. Also, the % of dividend will be distributed accordingly to the shareholder's percentage and is subject to change if shareholder has not fulfilled their duties including most of all growing the company. Dividend and shareholder percentage is subject to quarterly review in which maintaining equity will be based on merit and job accomplishment. If failure of position obligations is apparent, 1% ownership will be withheld every 6 months and redeemed by merit or sold back at $25,000 per Class A share to David Gemmell as a first offer then to hierarchy as a second offer until all equity is exhausted, shareholder has been removed or an agreement has been established.

### Conflict of Opportunities and Non-Competition

44. Each Shareholder agrees that any business opportunity that comes to the attention of the Shareholder while the Shareholder is a Shareholder, director, officer or employee of the Corporation and that is similar to or that relates to the current or anticipated business opportunities of the Corporation or that arises out the Shareholder's connection with the Corporation, belongs to the Corporation.

45. Each Shareholder agrees that while a Shareholder, director, officer or employee of the Corporation and for a period of 2 years after ceasing to be a Shareholder, director, officer or employee of the Corporation, the Shareholder will not, solely or jointly with others:

    a. undertake, plan, organize or be involved in any way with any business or any business activity that competes with the current or anticipated business of the Corporation in the geographic area in which the Corporation carries on its usual business; or

    b. divert or attempt to divert from the Corporation any business the Corporation enjoyed, solicited, or attempted to solicit from its customers, prior to the Shareholder ceasing to be a Shareholder.

46. Each Shareholder agrees that for so long as the Shareholder is a Shareholder, director, officer or employee of the Corporation, the Shareholder will not engage or participate in any other business activities that conflict with the best interests of the Corporation.

**Non-Solicitation**

47. Each Shareholder agrees that while a Shareholder, director, officer or employee of the Corporation and for a period of 2 years after ceasing to be a Shareholder, director, officer or employee of the Corporation, the Shareholder will not in any way, directly or indirectly, induce any Shareholder, director, officer or employee of the Corporation to leave their position with the Corporation or to compete in any way with the Corporation and will not interfere with the Corporation's relationship with its other Shareholders, directors, officers or employees. Such enticement or interference would be harmful and damaging to the Shareholders and to the Corporation.

**Notice of this Agreement on Share Certificates**

48. Any and all share certificates issued by the Corporation will have subscribed on them the following notice, or a notice in substantially the following form:

- The shares represented by this certificate are subject to the provisions of a shareholder agreement, made the _____ day of December, 2019, which restricts the right to sell, transfer or encumber any shares in the Corporation, including the shares represented by this certificate. Notice of the said agreement is hereby given. A copy of the said agreement may be obtained by sending a written request to the Board of Directors for the Corporation.

**Effective Date and Term**

49. This Agreement will come into effect on the date of its execution.

50. This Agreement will remain in effect until the earliest of:

    a. the date specified in a written agreement, signed by all of the Shareholders, terminating this Agreement; or

    b. the bankruptcy, winding-up or dissolution of the Corporation.

### Address for Notice

51. Service of all notices under this Agreement will be sufficient if delivered personally or mailed certified, return receipt requested, postage prepaid, to the following address. A copy of such notices will be sent to board members in an appropriate matter:
    - Dentistry X
      4455 SW 34th Street, Gainesville, FL 32608

52. Any Shareholder may, on written notice to all other Shareholders and the Corporation, change the Shareholder's address for notice under this Agreement. If the Corporation's registered address changes, the Corporation may, on written notice to all Shareholders, change its address for notice under this Agreement.

### Severability

53. If there is a conflict between any provision of this Agreement and the Act, the Act will prevail and this Agreement will be amended in order to comply with the Act. Further, any provisions required by the Act are incorporated into this Agreement.

54. If there is a conflict between any provision of this Agreement and any form of Agreement prescribed by the Act, that prescribed form will prevail and such provisions of the Agreement will be amended or deleted as necessary in order to comply with that prescribed form. Further, any provisions that are required by that prescribed form are incorporated into this Agreement.

55. In the event that any of the provisions of this Agreement are held to be invalid or unenforceable in whole or in part, those provisions to the extent enforceable and all other provisions shall nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Agreement and the remaining provisions had been executed by the Parties subsequent to the expungement of the invalid provision.

### General Provisions

56. This Agreement will not be amended or modified except by the written agreement of all the Shareholders. All Shareholders, without the consent of the Corporation, may modify, amend or rescind this Agreement.

57. This Agreement constitutes the entire agreement between the Parties and supersedes any previous agreement or representation with respect to the matters set forth in this Agreement, and there are no conditions, warranties, representations, agreements, express or implied, relating to such matters.

58. This Agreement will be construed in accordance with and governed by the laws of the State of Florida.

59. Headings are inserted for the convenience of the Parties and for the purpose of interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa. Words in the neuter mean and include the masculine and feminine and vice versa.

60. This Agreement will inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns, as the case may be, of the Parties.

61. This Agreement may be executed in counterparts. Facsimile signatures are binding and are considered to be original signatures.

62. Time is of the essence in this Agreement.

63. The Parties will do all acts and things and execute all documents that are reasonably necessary or advantageous to enforce this Agreement according to its tenor and intent and each Party will bear that Party's own expenses in connection with the same.

64. All dollar amounts in this Agreement refer to US Dollars, and all payments required to be paid under this Agreement will be paid in US Dollars unless the Parties agree otherwise.

65. No Party will be liable in damages or have the right to terminate this Agreement for any delay or default in performance if such delay or default is caused by conditions beyond that Party's control including, but not limited to acts of God or government restrictions, wars, insurrections, natural disasters, such as earthquakes, hurricanes or floods and/or any other cause beyond the reasonable control of the Party whose performance is affected.

**IN WITNESS WHEREOF** the Parties have executed this Agreement on this _____ day of December, 2019.

_____
David Gemmell Shareholder

_____
Sean Hershberger Shareholder

_____
Josh Kats Shareholder

_____
Cleo Vidican Shareholder

_____
Arézou Shahbazi  Shareholder

Dentistry X Corporation

Per:_____ (SEAL)

©2002-2019 LawDepot.com®

Sean Hershberger, DDS, MS
mAx Resolution LLC
1954 1st Street #344
Highland Park, IL 60035

<div style="border:1px solid black; display:inline-block; text-align:center;">

**EXHIBIT
C**

</div>

November 25, 2020

David Gemmell, DDS
DentistryX
1309 Coffeen Ave. Ste. 1397
Sheridan, WY 82801

Dear Dr. Gemmell,

I have received your offer to purchase my five percent (5%) ownership interest in DentistryX, LLC for $72,000, or $14,400 per 1% interest, sent via email November 17, 2020.

I hereby accept your good faith offer of $72,000, or $14,400 per 1% interest, upon mutually agreeable terms.

Sincerely,

Sean Hershberger, DDS, MS
mAx Resolution LLC

Encl

Name: Arezou Shahbazi Moghaddam
Name of the LLC: NAMA 3D LLC
Address of LLC: 3400 Cottage Way, STE G2 #1798
Sacramento, CA 95825


November 23, 2020

David Gemmell, DDS
DentistryX
1309 Coffeen Ave. Ste. 1397
Sheridan, WY 82801

<div style="border:1px solid black;display:inline-block;padding:8px;text-align:center;">

**EXHIBIT**

**D**

</div>

Dear Dr. Gemmell,

I have received your offer to purchase my five percent (5%) ownership shares in DentistryX, LLC, in an email I received November 21, 2020.

Our contract guarantees a $25,000 per share buy-back of my $15,000 per share initial investment if executed within the first 24 months until December 2021. As always, I am willing to act in good faith and also considering the fact that we will be long-term professional colleagues, I prefer to avoid further negativity and keep the respect between us. With that said, I will accept your offer of $72,000 ($14,400 per share) subject to the terms of a purchase agreement.

Thank you.
Best,
Arezou

Joshua C Kats, DDS, MS, FAGD
Oral & Maxillofacial Radiology, LLC
3901 NW 79th Ave Suite 245 #880
Miami, FL. 33166

November 23, 2020

David Gemmell, DDS
DentistryX
1309 Coffeen Ave. Ste. 1397
Sheridan, WY 82801

┌─────────────────┐
│    **EXHIBIT**    │
│      **E**        │
└─────────────────┘

Dr. Gemmell,


On November 21, 2020, I received your forwarded email offer to purchase my five percent (5%)
ownership in DentistryX, LLC for $72,000 ($14,400 per share).  While our contract guarantees a $25,000
per share buy-back of my initial $15,000 per share investment if executed within the first 2 years, I will
act in good faith and am willing to accept your offer subject to the terms of a purchase agreement.  Thank
you.



Best,



Joshua C Kats, DDS, MS, FAGD
Oral & Maxillofacial Radiology, LLC