EXHIBIT

A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsd.uscourts.gov**

In re:

CASE NO.: 23-13357-PDR

Chapter 13

DAVID WALLACE GEMMELL

Adv. Proc. No. 23-01243-PDR

      Debtor.

_____/

Drs. Arezou Shahbazi, Joshua Kats,
and Sean Hershberger,

      Plaintiffs

vs.

DAVID WALLACE GENNELL,

      Defendant.

_____/

**DRS. AREZOU SHAHBAZI, JOSHUA KATS, AND**
**SEAN HERSHBERGER'S AMENDED COMPLAINT**
**OBJECTING TO DISCHARGEABILITY OF DEBT**
**AND ASSERTING STATE LAW CAUSES OF ACTION**

    Drs. Arezou Shahbazi, Joshua Kats, and Sean Hershberger (collectively, the "Creditors" or

"Plaintiffs"), pursuant to Federal Rules of Bankruptcy Procedure 5005(a) and 7003, sue the

Defendant David Wallace Gemmell, (the "Debtor") and allege:

**PARTIES AND JURISDICTION**

    1.    This Court has jurisdiction in this proceeding pursuant to 28 U.S.C. §§ 1334(b) and

157(b)(2)(I), 11 U.S.C. § 523(c), and Admin. Order 2012-25 of the United States District Court

for the Southern District of Florida, referring bankruptcy matters to this court. It is a core

proceeding.

2.      Plaintiff, Dr. Arezou Shahbazi, is a creditor in this Chapter 13 case.

3.      Plaintiff, Dr. Joshua Kats, is a creditor in this Chapter 13 case.

4.      Plaintiff, Dr. Sean Hershberger, is a creditor in this Chapter 13 case.

5.      The Defendant is the Debtor in this Chapter 13 case.

6.      All conditions precedent to the filing of this action have been satisfied or waived.

### STATEMENT OF THE ULTIMATE FACTS

7.      On April 28, 2023, the Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code. ECF No. 1. In his schedules, the Debtor listed claims for unknown amounts in favor of each of the Plaintiffs.

8.      Prior to his filing for bankruptcy, each Plaintiff invested $75,000 with the Debtor. At the time, they believed they were investing into a company called Dentistry X. Plaintiffs were led to believe that Dentistry X would be formed with Debtor serving as the President of the Company.

9.      In or around October and November 2019, the Debtor approached Plaintiffs about investing into Dentistry X. He represented that the company was valued at $1,500,000 and offered each Plaintiff a 5% interest for $75,000.

10.     The initial investors (Debtor, Plaintiffs, and one other individual, Cleo Vidican) were to be the original investors, who Debtor referred to as "the hierarchy."

11.     The Debtor pledged to be transparent with all aspects of the business. In November 2019 he communicated this to Plaintiffs via text message.

12.     In November 2019, the Debtor also communicated to Plaintiffs via text message that "your shares will always be protected" and that "if we ever do a round of private investing, I will never dilute your %." Debtor also stated that he expected to make annual distributions.

13.     He also encouraged them to invest by stating that "at this valuation this is a one time thing" and insisting that he needed a commitment by the end of November 2019.

14.     The Debtor further represented and agreed that if Plaintiffs wanted to withdraw from the venture, he would later pay them $125,000 each, i.e., he would pay them a return on their investments. The Plaintiffs would eventually choose to exercise this option in or around November 2020.

15.     Dentistry X, LLC ("DXLLC") was formed by the Debtor as a Florida Limited Liability Company on or about October 23, 2019. Debtor is the managing member of DXLLC.

16.     In or around December 2019, the Debtor, Plaintiffs, and Mr. Vidican signed a shareholder agreement for Dentistry X Corp. ("DXCorp.") The shareholder agreement states that Dentistry X "is incorporated under the Florida Business Corporation Act."

17.     DXCorp. was never incorporated and the Debtor never intended to form the Florida corporation. Rather, this was part of the Debtor's ruse to defraud the Plaintiffs.

18.     In or around February 2020 the Debtor asked the Plaintiffs to sign a shareholder agreement for a Wyoming Corporation named Dentistry X ("DXWY") and led them to believe that they would be part owners of that corporation.

19.     The shareholder agreement for DXWY indicated that the Debtor is the CEO and the four shareholders were various LLCs.

20.     The Debtor has represented to this Court that the LLCs were owned by the Plaintiffs and Mr. Vidican and that the DXWY shareholder agreement novated any prior agreements between the parties. *See* Doc. 20 at 4-5 (Motion to Dismiss).

21.     DXWY was never formed and the Debtor never intended to form a Wyoming corporation. This was part of the Debtor's plan to defraud the Plaintiffs.

22.    Plaintiffs are unsure what the Debtor did with the money they invested with him or into which entity (if any) it was transferred.

23.    In August 2020, Plaintiffs began requesting financial records and other documents from the Debtor and reminded him of his commitment to transparency. The Debtor promised to provide them "in the next couple weeks."

24.    In September 2020, Plaintiffs again requested balance sheets, income statements, cash flow statements, statements of shareholder equity, expense reports, and signed contracts.

25.    Throughout these discussions, Plaintiffs and Debtor referred to Plaintiffs as "owners" of Dentistry X (which they sometimes referred to colloquially as "X").

26.    In or around early November 2020, the Debtor repeated his prior promises to "protect" Plaintiffs investment stating via text message "I'll buy you out. Anyone of you."

27.    In or around November 2020, the Debtor held a video call via Microsoft Teams. In this meeting he announced that he was "de-risking the deal," meaning that he would no longer honor the $125,000 buyout payment he had previously promised.

28.    Plaintiffs objected, demanded that the Debtor honor his commitment to repurchase their shares, and informed the Debtor that they were exercising the buyback option in their agreement.

29.    The Plaintiffs then began negotiating with the Debtor regarding a potential buyout, not by Dentistry X, but by the Debtor personally.

30.    Eventually, each of the Plaintiffs entered into a binding agreement with the Debtor in which the Debtor agreed to purchase their membership interests in Dentistry X for $72,000 each. *See* Ex. C (Hershberger acceptance); Ex. D (Moghaddam acceptance); Ex. E (Kats acceptance).

4

31.     Ultimately, Dentistry X ceased operations in early 2021. No distribution was made to Plaintiffs from Dentistry X and the Debtor failed to honor his agreement to repurchase Plaintiffs' membership interests.

32.     The Debtor continued to refuse to produce financial documents. In or around December 2020, Plaintiffs served Debtor with a Demand for Recission and Inspection of Books and Records. The Debtor ignored this demand.

33.     Upon information and belief, from January 2020 until present day, instead of investing Plaintiffs' money as promised and agreed, the Debtor has used Dentistry X bank accounts as his personal line of credit, withdrawing and repaying loans at will without the knowledge, authorization, or consent of the Plaintiffs.

34.     Although the Debtor owed a fiduciary duty to the Plaintiffs, he instead used their investments for his own benefit and depleted all business assets to the detriment of Plaintiffs.

35.     In or around February 2023, Plaintiffs filed a civil action against the Debtor in California Superior Court alleging, among other things, that Debtor committed fraud and breached the fiduciary duties owed to them while he was acting as the Manager of Dentistry X.

36.     Each Plaintiff has suffered damages as a result of the Debtors fraudulent conduct.

37.     In order to prosecute this action, Plaintiffs have been required to retain the services of the undersigned attorneys.

<u>**COUNT I**</u>
**Breach of Fiduciary Duty (Florida LLC)**

38.     Plaintiffs reallege incorporate by reference each allegations contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

39.     This is a claim against the Debtor for breach of fiduciary duty. It is brought on behalf of each of the three Plaintiffs.

5

40.     This Count is brought in the alternative to Counts II and III. For purpose of this Count, Plaintiffs allege that they invested money in DXLLC, a Florida limited liability company.

41.     The Debtor is, and at all times mentioned herein was, the managing manager of DXLLC and took control, without Plaintiffs' consent, of all aspects of DXLLC. As managing member of the company, the Debtor owed to each of the Plaintiffs a duty of loyalty and a duty of care. *See* § 605.04091(1).

42.     The Debtor breached his fiduciary duty owed to Plaintiffs by:

a.     failing to make accurate and timely distributions to the members, including Plaintiffs, and by falsifying the K-1's issued to Plaintiffs and the Internal Revenue Service;

b.     intentionally usurping various business opportunities belonging to DXLLC;

c.     using the DXLLC bank accounts as his personal line of credit, withdrawing and repaying loans to himself and to his corporation at will without the knowledge, authorization or consent of Plaintiffs;

d.     embezzling funds through unauthorized payments to himself and his family members each month as additional management fees;

e.     engaging in self-dealing through an attempted purchase of a 51% equity stake deal in a Vancouver-based imaging center, and then presenting a falsified fee structure to the Plaintiffs after work had been completed; and

f.     engaging in self-dealing at a disadvantage to plaintiffs.

43.     As a result of the breach of fiduciary duty owed by the Debtor to Plaintiffs, Plaintiffs have been damaged in excess of $225,000.

44.     Plaintiffs have suffered special damages in that they have been physically inconvenienced, have suffered from reduced earning capacity, and have had to forego other investment opportunities due to the Debtor's breach of fiduciary duty.

45.     Because the Debtor's conduct was malicious, fraudulent and oppressive and done with a conscious disregard of Plaintiffs' rights, Plaintiffs are also entitled to exemplary and punitive damages in amount to be decided at trial.

## COUNT II
### Breach of Fiduciary Duty (Florida Corporation)

46.     Plaintiffs reallege incorporate by reference each allegations contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

47.     This is a claim against the Debtor for breach of fiduciary duty. It is brought on behalf of each of the three Plaintiffs.

48.     This Count is brought in the alternative to Counts I and III. For purpose of this Count, Plaintiffs allege that they invested money in DXCorp., a Florida corporation.

49.     The Debtor purported to be the CEO of DXCorp. and, without Plaintiffs' consent, took control of all aspects of the Plaintiffs' investments. The Debtor owed various fiduciary duties to the Plaintiffs including the duty to act in good faith and in a manner he reasonably believed to be in the best interest of the corporation. *See* § 607.0803(1).

50.     The Debtor breached his fiduciary duties owed to Plaintiffs by:

     a.     failing to make accurate and timely distributions to the members, including Plaintiffs, and by falsifying tax documents issued to Plaintiffs and the Internal Revenue Service;

     b.     intentionally usurping various corporate opportunities belonging to DXCorp.;

7

      c.     using the DXCorp. bank accounts as his personal line of credit, withdrawing and repaying loans to himself and to his corporation at will without the knowledge, authorization or consent of Plaintiffs;

      d.     embezzling funds through unauthorized payments to himself and his family members each month as additional management fees;

      e.     engaging in self-dealing through an attempted purchase of a 51% equity stake deal in a Vancouver-based imaging center, and then presenting a falsified fee structure to the Plaintiffs after work had been completed; and

      f.     engaging in self-dealing at a disadvantage to plaintiffs.

51.    As a result of the breach of fiduciary duty owed by the Debtor to Plaintiffs, Plaintiffs have been damaged in excess of $225,000.

52.    Plaintiffs have suffered special damages in that they have been physically inconvenienced, have suffered from reduced earning capacity, and have had to forego other investment opportunities due to the Debtor's breach of fiduciary duty.

53.    Because the Debtor's conduct was malicious, fraudulent and oppressive and done with a conscious disregard of Plaintiffs' rights, Plaintiffs are also entitled to exemplary and punitive damages in amount to be decided at trial.

<u>COUNT III</u>
**Breach of Fiduciary Duty (Wyoming Corporation)**

54.    Plaintiffs reallege incorporate by reference each allegations contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

55.    This is a claim against the Debtor for breach of fiduciary duty. It is brought on behalf of each of the three Plaintiffs.

56.     This Count is brought in the alternative to Counts I and II. For purpose of this Count, Plaintiffs allege that they invested money in DXWY, a Wyoming corporation.

57.     The Debtor purported to be the CEO of DXWY and, without Plaintiffs' consent, took control of all aspects of the Plaintiffs' investments. The Debtor owed various fiduciary duties to the Plaintiffs including the duty to act in good faith, to act with the care an ordinary prudent person in a like position would under similar circumstances, and to act in a manner he reasonably believed to be in the best interest of the corporation. *See* § 17-19-842(a), Wyo. Stat.

58.     The Debtor breached his fiduciary duties owed to Plaintiffs by:

1.      failing to make accurate and timely distributions to the members, including Plaintiffs, and by falsifying tax documents issued to Plaintiffs and the Internal Revenue Service;

2.      intentionally usurping various corporate opportunities belonging to DXWY;

3.      The Debtor represented to Plaintiffs that he would invest their money into a Florida Corporation that would perform dentistry related services such as reading scans and x-rays, and he had the Plaintiffs sign a shareholder agreement.  When the Debtor made these promises to Plaintiffs he had no intention of ever forming a dentistry business in which they would have equity and instead, the Debtor sought only to enrich himself at the Plaintiffs' expense.  The Plaintiffs reasonably relied on the Debtor's representation of his future intention when they agreed to invest money with the Debtor.

4.      using the DXWY bank accounts as his personal line of credit, withdrawing and repaying loans to himself and to his corporation at will without the knowledge, authorization or consent of Plaintiffs;

9

5. embezzling funds through unauthorized payments to himself and his family members each month as additional management fees;

6. engaging in self-dealing through an attempted purchase of a 51% equity stake deal in a Vancouver-based imaging center, and then presenting a falsified fee structure to the Plaintiffs after work had been completed; and

7. engaging in self-dealing at a disadvantage to plaintiffs.

59. As a result of the breach of fiduciary duty owed by the Debtor to Plaintiffs, Plaintiffs have been damaged in excess of $225,000.

60. Plaintiffs have suffered special damages in that they have been physically inconvenienced, have suffered from reduced earning capacity, and have had to forego other investment opportunities due to the Debtor's breach of fiduciary duty.

61. Because the Debtor's conduct was malicious, fraudulent and oppressive and done with a conscious disregard of Plaintiffs' rights, Plaintiffs are also entitled to exemplary and punitive damages in amount to be decided at trial.

## COUNT IV
### Breach of DXCorp.'s Shareholder Agreement

62. Plaintiffs reallege incorporate by reference each allegation contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

63. This Count is brought in the alternative to Counts V. For purpose of this Count, Plaintiffs allege that they invested money in DXCorp., a Florida corporation.

64. This is a claim against the Debtor for breach of DXCorp.'s shareholder agreement. It is brought on behalf of each of the three Plaintiffs.

65.    Since Plaintiffs executed a Shareholder Agreement (the "Florida Agreement") with the Debtor in January 2020, Plaintiffs have done everything required of them pursuant to the terms of the agreement.

66.    Under the Florida Agreement's "Conflict of Opportunities and Non-Competition" provisions, the shareholders and officers of DXCorp. had certain obligations to the corporation and to each other. Those sections of the Florida Agreement provide as follows:

**44.** Each Shareholder agrees that any business opportunity that comes to the attention of the Shareholder while the Shareholder is a Shareholder, director, officer or employee of the Corporation and that is similar to or that relates to the current or anticipated business opportunities of the Corporation or that arises out the Shareholder's connection with the Corporation, belongs to the Corporation.

**45.** Each Shareholder agrees that while a Shareholder, director, officer or employee of the Corporation and for a period of 2 years after ceasing to be a Shareholder, director, officer or employee of the Corporation, the Shareholder will not, solely or jointly with others:

a. undertake, plan, organize or be involved in any way with any business or any business activity that competes with the current or anticipated business of the Corporation in the geographic area in which the Corporation carries on its usual business; or

b. divert or attempt to divert from the Corporation any business the Corporation enjoyed, solicited, or attempted to solicit from its customers, prior to the Shareholder ceasing to be a Shareholder.

**46.** Each Shareholder agrees that for so long as the Shareholder is a Shareholder, director, officer or employee of the Corporation, the Shareholder will not engage or participate in any other business activities that conflict with the best interests of the Corporation.

67.    The Debtor breached the Florida Agreement by:

a.    intentionally usurping various corporate opportunities belonging to DXCorp.;

b.    failing to protect Plaintiffs' investments;

c.    failing to keep Plaintiffs' investment separate from his own funds;

d.    failing to organize the investments lawfully a Corporation;

11

e.  failing to honor buy back provisions of the Agreement; and

f.  otherwise failing to comply with the terms and conditions of the Agreement.

68.    As a direct and proximate result of the breaches by Defendants, Plaintiffs have been damaged in an amount in excess of $225,000.

## COUNT V
## Equitable Accounting (Florida LLC)

69.    Plaintiffs reallege incorporate by reference each allegation contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

70.    This is a claim against the Debtor for equitable accounting. It is brought on behalf of each of the three Plaintiffs.

71.    This Count is brought in the alternative to Counts VI and VII. For purpose of this Count, Plaintiffs allege that they invested money in DXLLC, a Florida limited liability company.

72.    The Debtor is in sole possession of the books, assets, accounts and all other financial information of DXLLC.

73.    The Debtor had a statutory obligation to provide this information to the Plaintiffs. *See* § 605.0410(1), (3)(a).

74.    Upon information and belief, an operating agreement governing DXLLC exists and provides members with additional rights to access this information.

75.    The Debtor has failed and refused, and continues to fail and refuse, to provide this information to Plaintiffs, and has blocked Plaintiffs' administrative access to the same. As such, the assets, liabilities, profits, and losses related to DXLLC cannot be ascertained without a complete accounting of the ongoing financial operations of DXLLC.

76.    Plaintiffs are informed and believe, and based thereon allege, that such a full and complete accounting of the book and records (including computerized financial records) of

12

DXLLC, is the only way Plaintiffs can determine the amount of funds and proceeds due and owing to them and the only way Plaintiffs can calculate the precise amount of damages owed to them.

77.    Plaintiffs have performed each and every obligation required of them by the operating agreement described herein, except those obligations that have been excused by the Debtor's breach.

78.    As a direct and proximate result of the Debtor 's breach of the Agreement as set forth herein, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT VI
### Equitable Accounting (Florida Corporation)

79.    Plaintiffs reallege incorporate by reference each allegation contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

80.    This is a claim against the Debtor for equitable accounting. It is brought on behalf of each of the three Plaintiffs.

81.    This Count is brought in the alternative to Counts V and VII. For purpose of this Count, Plaintiffs allege that they invested money in DXCorp., a Florida corporation.

82.    The Debtor is in sole possession of the books, assets, accounts and all other financial information of DXCorp.

83.    The Debtor had a statutory obligation to provide this information to the Plaintiffs. *See* § 607.1602.

84.    The Debtor has failed and refused, and continues to fail and refuse, to provide this information to Plaintiffs, and has blocked Plaintiffs' administrative access to the same. As such, the assets, liabilities, profits, and losses related to DXCorp. cannot be ascertained without a complete accounting of the ongoing financial operations of DXCorp.

85.    Plaintiffs are informed and believe, and based thereon allege, that such a full and complete accounting of the book and records (including computerized financial records) of DXCorp., is the only way Plaintiffs can determine the amount of funds and proceeds due and owing to them and the only way Plaintiffs can calculate the precise amount of damages owed to them.

86.    As a direct and proximate result of the Debtor 's breach of the Agreement as set forth herein, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT VII**
**Equitable Accounting (Wyoming Corporation)**

87.    Plaintiffs reallege incorporate by reference each allegation contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

88.    This is a claim against the Debtor for equitable accounting. It is brought on behalf of each of the three Plaintiffs.

89.    This Count is brought in the alternative to Counts V and VI. For purpose of this Count, Plaintiffs allege that they invested money in DXWY, a Wyoming corporation.

90.    The Debtor is in sole possession of the books, assets, accounts and all other financial information of DXWY.

91.    The Debtor had a statutory obligation to provide this information to the Plaintiffs. *See* § 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, Wyo. Stat.

92.    Additionally, the DXWY shareholder agreement provides shareholders with additional rights to access this information. Specifically, Article II, Section 5 of the agreement states:

**5. Books and Records.** The Company shall maintain complete and accurate accounts in proper books of all transactions The Company shall maintain at its principal office the following (a) the full name and last known business of residence

14

address of each Shareholder (b) records detailing all capital accounts including entries for contributions and distributions, ownership interest and percentage ownership, (c) a copy of the articles of formation of the Company and any and all amendments. (d) copies of ail federal state, and local income tax or returns and reports for the six most recent taxable years. (e) a copy of this Agreement and any amendments; (r) copies of financial statements of the Company for the six most recent fiscal years. (g) the books or records as related to the internal affairs of the Company; and (h) true and full information regarding the status of the business and financial conditions of the Company.

93.     The Debtor has failed and refused, and continues to fail and refuse, to provide this information to Plaintiffs, and has blocked Plaintiffs' administrative access to the same. As such, the assets, liabilities, profits, and losses related to DXWY cannot be ascertained without a complete accounting of the ongoing financial operations of DXWY.

94.     Plaintiffs are informed and believe, and based thereon allege, that such a full and complete accounting of the book and records (including computerized financial records) of DXWY is the only way Plaintiffs can determine the amount of funds and proceeds due and owing to them and the only way Plaintiffs can calculate the precise amount of damages owed to them.

95.     As a direct and proximate result of the Debtor 's breach of the Agreement as set forth herein, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT VIII
### Fraud—Misrepresentation

96.     Plaintiffs reallege incorporate by reference each allegation contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

97.     This is a claim against the Debtor for fraudulent misrepresentation. It is brought on behalf of each of the three Plaintiffs.

98.     In or about August to November of 2019, the Debtor represented to Plaintiffs that he had several clinics contracted for services to be delivered upon website activation, that premium prices were already set at $125-$200 per scan, that hundreds of scans per day were expected, and

that a massive social media blitz would be activated by an already-hired marketing team to ensure a successful website launch.

99.      Based on these representations, Plaintiffs invested their time, energy, and money with the Debtor by way of Dentistry X.

100.     At all times herein, Plaintiffs reasonably relied on the representations described herein made by the Debtor.

101.     The representations made by the Debtor were at all times false.

102.     As a direct and proximate result of the Debtor's false representations as set forth herein, Plaintiffs have been damaged in an amount not less than $225,000 to be determined at trial.

103.     Because the Debtor's conduct was malicious, fraudulent, oppressive, and done with a conscious disregard of Plaintiffs' rights, Plaintiffs are also entitled to exemplary and punitive damages in amount to be decided at trial.

## COUNT IX
### Fraud—Promise of Future Performance Made Without Intention to Perform

104.     Plaintiffs reallege incorporate by reference each allegations contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

105.     This is a claim for fraud based on future promises the Debtor made to Plaintiffs with no intention of performing.

106.     Specifically, the Debtor represented to Plaintiffs that he would invest their money into a Florida Corporation and had the Plaintiffs sign a shareholder agreement. The Debtor later represented to Plaintiffs that he was forming a Wyoming Corporation and would give their respective companies an interest therein and had the Plaintiffs sign a shareholder agreement to that effect.

107.    The Debtor represented that the business would perform dentistry related services such as reading scans and x-rays.

108.    When the Debtor made these promises to Plaintiffs he had no intention of ever forming a dentistry business and no intention of investing Plaintiffs money. Instead, the Debtor sought only to enrich himself at the Plaintiffs expense.

109.    The Plaintiffs reasonably relied on the Debtor's representation of his future intention when they agreed to invest money with the Debtor.

110.    As a direct and proximate result of the Debtor's promises of future performance made without an intention to perform, as set forth herein, Plaintiffs have been damaged in an amount not less than $225,000 to be determined at trial.

111.    Because the Debtor's conduct was malicious, fraudulent, oppressive, and done with a conscious disregard of Plaintiffs' rights, Plaintiffs are also entitled to exemplary and punitive damages in amount to be decided at trial.

## COUNT X
**Recission of Investment Contract**

112.    Plaintiffs reallege incorporate by reference each allegations contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

113.    This is a claim for recission of the Plaintiff's contract with Plaintiff to invest money into a company d/b/a Dentistry X. It is brought on behalf of all three Plaintiffs.

114.    Plaintiff offered to sell, and Plaintiffs agreed to purchase, a 5% stake in Dentistry X in exchange for $75,000.

115.    In order to induce Plaintiffs into investing, Plaintiff falsely represented that Dentistry X was an existing business with a positive cash flow. He also represented that Dentistry X would make annual distributions and that the business was valued at $1,500,000.

116.     The Debtor never invested Plaintiff's money into Dentistry X or any other company and never transferred ownership in any company to Plaintiffs in exchange for their investment. Instead, the Debtor appropriated these funds for his own use.

117.     In or around November 2019, Plaintiffs informed the Debtor that they wished to rescind the investment contract.

118.     Plaintiffs cannot restore the benefits they received from this contract to the Debtor because they received no benefits.

119.     Plaintiffs have no adequate remedy at law other than this recission claim.

120.     Plaintiffs are entitled to the return of the consideration they paid to Debtor, $225,000.

<u>**COUNT XI**</u>
**Breach of Investment Contract—Corporate Promoter Liability**

121.     Plaintiffs reallege incorporate by reference each allegation contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

122.     This is a claim for breach of investment contract against the debtor based on his role as the promoter of a fictitious corporation, Dentistry X This claim is brought on behalf of all three Plaintiffs.

123.     The Debtor was the promoter of the entity Dentistry X or, alternatively, was using that name to conduct personal business operations.

124.     Plaintiffs are informed and believe that no corporation called Dentistry X has been incorporated in and jurisdiction.

125.     In or around November 2019, the Debtor entered into a contract with each Plaintiff whereby each Plaintiff would contribute $75,000 to Dentistry X in exchange for a 5% equity interest in the corporation.

18

126.    The Plaintiff represented himself to be acting on behalf of Dentistry X.

127.    The Plaintiffs reasonably believed the Debtor to be acting on behalf of Dentistry X and had no actual knowledge at that time that there was not or might not be any such corporate entity.

128.    The Debtor has not delivered any shares in any corporation to Plaintiffs.

129.    The Debtor entered into the investment contract as a promoter of Dentistry X and, pursuant to § 607.0204, Fla. Stat., is personally liable for the obligations of Dentistry X under the contract.

130.    As a result of the Debtor's breach, Plaintiffs have been damaged in an amount not less than $225,000 to be determined at trial.

131.    Because the Debtor's conduct was malicious, fraudulent, oppressive, and done with a conscious disregard of Plaintiffs' rights, Plaintiffs are also entitled to exemplary and punitive damages in amount to be decided at trial.

## COUNT XII
### Objection to Dischargeability Under 11 U.S.C. § 523(a)(2)(A)

132.    Plaintiffs reallege incorporate by reference each allegation contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

133.    This is a claim objecting to the dischargability of the Debtor's debts to Plaintiffs pursuant to 11 U.S.C. § 523(a)(2)(A). It is brought on behalf of each of the three Plaintiffs.

134.    In or about August to November of 2019, in order to induce the Plaintiffs to invest in Dentistry X, the Debtor represented to Plaintiffs that he had several clinics contracted for services to be delivered upon website activation, that premium prices were already set at $125-$200 per scan, that hundreds of scans per day were expected, and that a massive social media blitz would be activated by an already-hired marketing team to ensure a successful website launch.

135.     Based on these representations, Plaintiffs invested their time, energy, and money with the Debtor by way of Dentistry X.

136.     The representations made by the Debtor were at all times false.

137.     At all times herein, Plaintiffs reasonably relied on the representations described herein made by the Debtor and suffered damages as a result.

138.     Plaintiffs' claims against the Debtor are for money obtained by false pretenses, a false representation, and actual fraud, other than a statement respecting the Debtor's or insider's financial condition. The Debtor's debts to Plaintiffs are therefore nondischargeable.

## COUNT XIII
### Objection to Dischargeability Under 11 U.S.C. § 523(a)(4)

139.     Plaintiffs reallege incorporate by reference each allegation contained in paragraphs 1 through 37, 42, 50, and 58 of this Complaint as though restated fully herein.

140.     This is a claim objecting to the dischargability of the Debtor's debts to Plaintiffs pursuant to 11 U.S.C. § 523(a)(4). It is brought on behalf of each of the three Plaintiffs.

141.     As managing-member of Dentistry X, the Debtor owed a fiduciary duty to each of the three Plaintiffs.

142.     From January 2020 until present day, instead of investing Plaintiffs' money as promised and agreed, Plaintiffs are informed and believe, and on that basis allege, that Debtor used Dentistry X accounts as his personal line of credit, withdrawing and repaying loans at will without the knowledge, authorization or consent of the members of Dentistry X.

143.     Plaintiff's claims against the Debtor are based on the Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The Debtor's debts to Plaintiffs are therefore nondischargeable.

## COUNT XIV
### Breach of Buyout Agreement

144.    Plaintiffs reallege incorporate by reference each allegation contained in paragraphs 1 through 37 of this Complaint as though restated fully herein.

145.    This is a claim against the Debtor for breach of his agreement to buy the Plaintiff's membership interests in Dentistry X. It is brought on behalf of each of the three Plaintiffs.

146.    Pursuant to the "pre-emptive rights" section of Dentistry X's shareholder agreement, a member wishing to disassociate from Dentistry X was required to first offer their shares to the Debtor at a price of $25,000 per share. *See* Ex. B (Shareholder Agreement) ¶ 14; *see also id.* ¶¶ 40-41 (titled "valuation"). The Plaintiffs exercised this option in November 2020.

147.    The Plaintiffs then began negotiating with the Debtor regarding a potential buyout, not by Dentistry X, but by the Debtor personally.

148.    Each of the Plaintiffs entered into a binding agreement with the Debtor in which the Debtor agreed to purchase their membership interests in Dentistry X for $72,000 each. *See* Ex. C (Hershberger acceptance); Ex. D (Moghaddam acceptance); Ex. E (Kats acceptance).

149.    The Debtor has not made any payment to the Plaintiffs and is personally liable to each for breach of contract.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant as follows:

a)    For damages according to proof at the time of trial;

b)    For punitive and exemplary damages in an amount sufficient to punish Defendant;

c)    Determining that the Debtor's debts to the Plaintiffs alleged in Counts I through IV of this Complaint are nondischargeable;

d)    For costs of suit herein; and

   e)  For such other relief as the court deems proper.

Dated:  April 24, 2024       Respectfully submitted,

               GRAYROBINSON, P.A.
               333 SE 2nd Avenue, Suite 3200
               Miami, FL 33131
               steven.solomon@gray-robinson.com
               Telephone:  (305) 913-0367
               Facsimile:  (305) 416-6887
               By: /s/ Steven J. Solomon_____
               Steven J. Solomon
               Florida Bar No. 931969
               Christopher N. Johnson
               Florida Bar No. 69329
               Stephen K. Varnell
               Florida Bar No. 1004236
               *Counsel to Dr. Arezou Shahbazi, Dr. Joshua*
               *Kats and Dr. Sean Hershberger*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 24, 2024, a true and correct copy of the foregoing was served by electronic transmission through the Court's CM/ECF system upon all parties on the attached CM/ECF Service List.

        */s/ Steven J. Solomon_____*
        Steven J. Solomon, Esq.